**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LATONYA J.,[1]                                         Case No. 1:24-cv-684

        Plaintiff,                              McFarland, J.
                                                      Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Latonya J. filed this Social Security appeal to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, which the Defendant disputes. For the following reasons, the undersigned recommends that the Commissioner's decision be AFFIRMED.

### I. Summary of Administrative Record

On September 30, 2021, Plaintiff filed an application for supplemental security income. Plaintiff's claims were denied initially and on reconsideration.

On August 31, 2023, Plaintiff appeared with counsel and testified at a telephonic hearing before Administrative Law Judge ("ALJ") Eric Westley. A vocational expert also appeared and testified. On November 7, 2023, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. The Appeals Council declined further

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff alleged disability beginning on September 1, 2021. She was 56 years old at the time of her application. (Tr. 34). Plaintiff had an eight-grade education, past relevant work as a housekeeper/cleaner and—at the time of the hearing—had not engaged in substantial gainful activity since the application date. (Tr. 19).

Based on the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis of the left ankle, chronic obstructive pulmonary disease (COPD), depressive disorder, schizophrenia spectrum disorder, anxiety disorder, and alcohol addiction disorder." (Tr. 20). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 21). The ALJ determined that, despite these impairments, Plaintiff retains the residual functional capacity ("RFC") to perform medium work subject to the following exceptions:

> except she can understand, remember, and carry out simple, repetitive instructions in a routine work setting with few changes; and can respond appropriately to supervisors, coworkers, and work situations if the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work or interaction with the public.

(Tr. 24).  Based on the RFC and testimony from the VE, the ALJ agreed that Plaintiff could not perform any past relevant work. (Tr. 34). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of

2

cleaner, linen supply room worker, and linen room attendant. (Tr. 35). The ALJ concluded that Plaintiff was not disabled since September 30, 2021, the date her application was filed. (Tr. 36).

In this case, Plaintiff contends that (1) the ALJ's RFC is inconsistent with the limitations of persuasive prior administrative medical findings and (2) the ALJ erred in analyzing Plaintiff's medically determinable severe impairments.  (Doc. 10).

## II.  Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also

exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct.1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Challenge to her RFC is without Merit.

Plaintiff first challenges the ALJ's formulation of her RFC, arguing that it was inconsistent with prior administrative medical findings. Specifically, Plaintiff points to the opinions of state agency psychological consultants Mary Hill, Ph.D., and Janet Souder, Psy.D., finding that Plaintiff's ability "to deal with supervisors, coworkers, and the public would be reduced and adequate to handle only *brief*, *infrequent*, and superficial contact." (Tr. 86, 97) (emphasis added). Plaintiff claims that although the ALJ found the opinions "generally persuasive," the formulated RFC was inconsistent with their opinions because the ALJ failed to incorporate limitations as to the frequency or duration of the contacts. Acknowledging the slightly different language in the RFC, the ALJ limited Plaintiff's interactions with coworkers to situations that do not require more than superficial contact, "meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work or interaction with the public." (Tr. 24).

The undersigned finds no error in the ALJ's decision. A claimant's RFC is an assessment of "the most a [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). An RFC assessment must be based on all the relevant evidence in the case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)– (5).

5

In rendering the RFC determination, the ALJ need not discuss every piece of evidence considered. *See Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004)). However, the ALJ still has an obligation to consider all of the evidence before him and to meaningfully explain how the evidence supports each conclusion and limitation included in the RFC. *See Ryan v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 797, 803 (S.D. Ohio 2017) (Newman, M.J.), *report and recommendation adopted*, No. 3:16-CV-124, 2017 WL 3412107 (S.D. Ohio Aug. 8, 2017) (Rice, D.J.); Soc. Sec. R. 96-8p, 1996 WL 374184, *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence ...").

The Sixth Circuit has found that the administrative law judge's residual functional capacity finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge is required to base her determination on a physician's opinion). As such, no bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). Under 20 C.F.R. § 404.1520c, an ALJ must evaluate the "persuasiveness" of each medical opinion,

6

which requires the ALJ to explain how he considered the supportability and consistency of the opinion. Notably, the role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.*, at *14.

In this case, on June 3, 2022 and September 27, 2022, Hill and Souder opined that Plaintiff "is able to understand, remember, and carry out simple 1-2 step instructions; can concentrate, persist, and maintain pace to carry out a simple learned routine in a structured and predictable work setting; is able to handle only brief, infrequent, and superficial contact with supervisors, coworkers, and the public; and can adapt and manage herself in a structured and predictable work setting, where changes can be explained in advance." (Tr. 32). The ALJ found the opinions generally persuasive, based on their being generally supported by evidence of Plaintiff's disorders and largely consistent with the remaining evidence of record. (*Id.*). As noted above, the ALJ similarly found that Plaintiff retained the RFC "to understand, remember, and carry out simple, repetitive instructions in a routine work setting with few changes; and can respond appropriately to supervisors, coworkers, and work situations if the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work or interaction with the public." (Tr. 24).

The undersigned agrees with Defendant that the ALJ largely, if not entirely, accommodated the opinions that Plaintiff could only handle brief and infrequent social conduct in the RFC. By limiting Plaintiff's work to simple, repetitive instructions, a routine work setting with few changes, with no public interaction, tandem work, or negotiating

with, instructing, persuading or directing the work of others, the ALJ necessarily limited the duration and frequency of required social interaction. *See Stephen D. v. Comm'r of Soc. Sec.*, 734 F.Supp.3d 729, 738 (S.D. Ohio May 16, 2024) (finding that when applied to social interactions, "occasionally" does not create a sufficient conflict with "superficially" such that the ALJ would be required to explain that change). *See also Martin v. Comm'r Soc. Sec.*, No. 2:24-cv-208, 2025 WL 3153381, at *2 (W.D. Mich. Nov. 12, 2025) ("the terms' ordinary meanings suggest that 'superficial' is mostly qualitative and 'occasional' is mostly quantitative. . . .  But that difference collapses in reality, as an interaction with a short quantitative measure is likely also a qualitatively shallow one") (citing *Stephen D*, 734 F. Supp. 3d at 737-38);

In any event, the ALJ was under no obligation to fully adopt the psychologist's opinions based on finding them generally persuasive. "[E]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.* 618 F. App'x 267, 275 (6th Cir. 2015). *See also Ferguson v. Comm'r of Soc. Sec.,* No. 2:18-cv-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their opinions in full"), Report and Recommendation adopted at 2019 WL 3083112 (S.D. Ohio July 15, 2019); 20 CFR § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion (s) or prior medical finding(s)").

Because the ALJ's RFC formulation is supported by substantial evidence and otherwise consistent with the applicable regulations, this Court must defer to his decision.

8

**C. The ALJ Properly Analyzed Plaintiff's Medically Determinable Impairments.**

In her second claim of error, Plaintiff contends that the ALJ failed to properly evaluate Plaintiff's diagnosed peripheral neuropathy. (Doc. 10). According to Plaintiff, the ALJ erred in determining that the impairment was not medically determinable and by failing to state the basis for including no limitations related to the impairment. The Court finds Plaintiff's claim without merit.

In general, a Plaintiff has the burden at Step 2 to establish first that she has medically determinable impairments, and second, the severity of each such impairment. Only "medically determinable" impairments are considered in formulating a claimant's RFC. To first prove that she has a medically determinable impairment (whether severe or non-severe), a Plaintiff is required to show that she has an impairment resulting from

> anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521. For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. § 423(d)(1)(A).

Plaintiff alleged disability in this case is based on multiple physical and mental impairments, including arthritis of the right hand. (Tr. 25). The ALJ found several impairments to be severe, but determined that Plaintiff's right hand arthritis was a non-medically determinable impairment, reasoning as follows:

9

> In this case, while examinations have revealed occasional right upper extremity pain, weakness, and hypersensitivity, they have confirmed normal upper extremity range of motion, full left upper extremity strength, in tact sensation and reflexes, and no ulnar deviation or Heberden or Bouchard nodes (Exhibit B4). An EMG of the right upper and lower extremities conducted in 2018 was normal (Exhibit B4F/19), and there is no evidence of record of degeneration on x-ray or other diagnostic imaging of the upper extremities. (*See* Exhibit B4F, B5F, B7F, B9F, B9F). Additionally, the claimant has not been diagnosed with right hand arthritis or any other musculoskeletal condition pertaining to her upper extremities. (*Id.*).

(Tr. 21). On this basis, the ALJ determined that Plaintiff's "reported hand symptoms, including frequent dropping of items," would not be considered in formulating the RFC.

Although the ALJ stated that "there is no objective evidence establishing that the claimant suffers from arthritis *or any other physical impairment* pertaining to the claimant's upper extremities" (Tr. 21 (emphasis added)), review of the entire decision indicates that the ALJ did find Plaintiff's peripheral neuropathy to be a medically determinable impairment, as it was considered in assessing Plaintiff's RFC. As noted by Defendant, the ALJ specifically acknowledged Plaintiff's peripheral neuropathy on multiple occasions in his decision. The ALJ first noted that on September 30, 2021, Dr. Binder diagnosed her with "peripheral neuropathy, likely secondary to alcohol use." (Tr. 26). The ALJ also supported his medium work limitation with evidence of Plaintiff's peripheral neuropathy. In assessing the opinions of the state medical consultants, the ALJ determined that their opinion that Plaintiff could perform medium work was adequately supported, in part, by evidence of peripheral neuropathy but also "intact range of motion, generally normal strength, unremarkable joints, and a normal gait with independent ambulation on examinations." (Tr. 31). In other words, Plaintiff's neuropathy impairment supported the reduced exertional requirements of medium work.

The ALJ determined at step-two of the sequential evaluation that several of Plaintiff's impairments were severe including osteoarthritis, COPD, depressive disorder, schizophrenia spectrum disorder, anxiety disorder, and alcohol addiction disorder. (Tr. 20). The ALJ's determination that peripheral neuropathy was not a severe impairment is supported by sufficient evidence.[2]  However, even if there was an error, the ALJ's failure to consider the impairment as "severe" at Step 2 of the sequential analysis, will not necessarily require reversal or remand.  Namely, errors at step two of the sequential analysis will not necessarily require reversal, if—as here—the ALJ finds at least one "severe" impairment and continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at step two. *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not

---

[2] As noted in the decision, a 2018 EMG of the upper and lower extremities was normal (Tr. 25) and the neuropathy diagnosis—along with a subsequent diagnosis of acroparaesthia—was likely secondary to alcohol use (Tr. 26, 27, 28).  Consultive examiner Swedberg opined that Plaintiff has no difficulty reaching grasping, or handling objects.  Although the ALJ found the opinion not fully persuasive, he found it to be generally supported by examination findings of full grip strength, normal range of motion, and largely consistent with the remaining evidence of occasional shoulder pain with otherwise normal extremities.  (Tr. 32, 33).  Plaintiff's neurological examination further revealed "no evidence of muscle weakness or atrophy, and all sensory modalities are well-preserved including light touch and pinprick." (Tr. 389).  Consultive examiner Frizhand also opined, albeit in 2020, that Plaintiff "experiences no difficult reaching, grasping, or handling objects." (Tr. 32). The ALJ again found the opinion not fully persuasive as it was rendered years ago and is not fully instructive as to Plaintiff's current functional capacity, but noted the opinion was supported by his examination finding full strength and normal range of motion and largely consistent with the remaining evidence of record noting occasional shoulder pain with otherwise normal extremities.  (Tr. 32-33).  Finally, as noted by Defendant, the state agency consultants also did not find the impairment to be severe after reviewing the evidence, including the record evidence regarding peripheral neuropathy.  (*See* Doc. 11 at PageID 640).

severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §
404.1545(e).

Here, the ALJ considered Plaintiff's impairments in combination in assessing her
RFC. (Tr. 20). As discussed above, this included her peripheral neuropathy
diagnosis/impairment. Although Plaintiff testified to greater functional limitations, upon
consideration of Plaintiff's subjective allegations, medical records and opinions, the ALJ
determined that Plaintiff's statements concerning the intensity, persistence and limiting
effects of her symptoms were not entirely consistent with the evidence. (Tr. 25). The ALJ's
decision is supported by substantial evidence.

### III. Conclusion and Recommendation

Because the ALJ's decision reflects no reversible error and is supported by
substantial evidence, **IT IS RECOMMENDED THAT** the decision be **AFFIRMED** and that
this case be **CLOSED**.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LATONYA J.,                                                 Case No. 1:24-cv-684

          Plaintiff,                                      McFarland, J.
                                                                    Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).