# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

|  |  |  |
|---|---|---|
| LATONYA J., | : | Case No. 1:24-cv-684 |
|  | : |  |
| Plaintiff, | : | Judge Matthew W. McFarland |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |

---

## ORDER ADOPTING REPORT AND RECOMMENDATION (Doc. 12)

---

This matter is before the Court on the Report and Recommendation of United States Chief Magistrate Judge Stephanie K. Bowman (Doc. 12), to whom this case is referred. Plaintiff filed Objections (Doc. 13) to the Report and Recommendation, while Defendant filed a Response to Plaintiff's Objections (Doc. 14). Thus, this matter is ripe for the Court's review.

## BACKGROUND

On November 27, 2024, Plaintiff Latonya J. initiated this federal action following Defendant Commissioner of Social Security's denial of her application for supplemental security income benefits. (Compl., Docs. 1-2, 5.) Plaintiff specifically challenges the Administrative Law Judge's ("ALJ's") formulation of her Residual Functional Capacity ("RFC") and the ALJ's alleged failure to evaluate whether her peripheral neuropathy was either a severe or non-severe impairment. (Statement of Errors, Doc. 10, Pg. ID 623-28.)

Defendant filed a Response in Opposition (Doc. 11) to this Statement of Errors. After summarizing the administrative record, the Chief Magistrate Judge found Plaintiff's arguments unconvincing and recommended affirming the ALJ's decision. (Report, Doc. 12.) Plaintiff brings two objections. (*See* Objections, Doc. 13.) In turn, Defendant opposes Plaintiff's Objections and requests the Court to adopt the Report and Recommendation in full. (Response to Objections, Doc. 14.)

## LAW AND ANALYSIS

The Court conducts de novo review of any portions of the Report and Recommendation objected to by a party. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Turning to the applicable substantive standards, judicial review of an ALJ's decision is "limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (characterizing substantial evidence as "less than a preponderance but more than a scintilla"). In this regard, district courts "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Courts review the ALJ's findings "based on the record as a whole," rather than in isolation. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The other

2

judicial inquiry—reviewing whether the ALJ followed the proper legal standards and regulations—may result in remand even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

"A person is 'disabled' under the Social Security Act if 'his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work . . . .'" *Heston*, 245 F.3d at 534 (quoting 42 U.S.C. § 423(d)(2)). This disability determination is made through a five-step process:

(1) Has the claimant engaged in substantial gainful activity?

(2) Does the claimant suffer from one or more severe impairments?

(3) Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

(4) Considering the claimant's RFC, can he or she perform his or her past relevant work?

(5) Assuming the claimant can no longer perform his or her past relevant work—and also considering the claimant's age, education, past work experience, and RFC—do significant numbers of other jobs exist in the national economy which the claimant can perform?

*Hale v. Comm'r of Soc. Sec.*, 307 F. Supp. 3d 785, 791 (S.D. Ohio 2017) (citing 20 C.F.R. § 404.1520(a)(4)).

## I.     RFC Challenge

The Court first considers Plaintiff's objection regarding the ALJ's formulation of Plaintiff's Residual Functional Capacity ("RFC"). Simply put, an RFC "is defined as the most a claimant can still do despite the physical and mental limitations resulting from

her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)).

Plaintiff specifically argues that the ALJ erred by finding two physicians' opinions "generally persuasive" but then failing to properly account for their opinions that Plaintiff can only engage in "brief" and "infrequent" social interactions. (Statement of Errors, Doc. 10, Pg. ID 623-25; Objections, Doc. 13, Pg. ID 658-59.) Dr. Hill and Dr. Souder opined that Plaintiff "is able to understand, remember, and carry out simple 1-2 step instructions; can concentrate, persist, and maintain pace to carry out a simple learned routine in a structured and predictable work setting; is able to handle only brief, infrequent, and superficial contact with supervisors, coworkers, and the public; and can adapt and manage herself in a structured and predictable work setting, where changes can be explained in advance." (Decision, Doc. 7-2, Pg. ID 55-56; *see also* Opinions, Doc. 7-3, Pg. ID 110-11, 121-22.) The ALJ found these opinions to be "generally persuasive" and concluded that Plaintiff had the ability to "understand, remember, and carry out simple, repetitive instructions in a routine work setting with few changes; and can respond appropriately to supervisors, coworkers, and work situations if the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others, and the occupation does not require tandem work or interaction with the public." (Decision, Doc. 7-2, Pg. ID 48, 55-56.)

Plaintiff faults the ALJ for not specifying the duration or frequency of superficial contact in the RFC. (Objection, Doc. 13, Pg. ID 659.) But, as the Chief Magistrate Judge

4

properly determined, "the ALJ largely, if not entirely, accommodated the opinions that Plaintiff could only handle brief and infrequent social conduct in the RFC [b]y limiting Plaintiff's work" to the following: "simple, repetitive instructions, a routine work setting with few changes, with no public interaction, tandem work, or negotiating with, instructing, persuading or directing the work of others." (Report, Doc. 12, Pg. 650-51.) Despite Defendant's and the Chief Magistrate Judge's emphasis regarding the outright prohibition on tandem work or any public interaction, Plaintiff does not engage with these terms or offer any argument as to why these particular terms contradict the doctors' opinions. (*See* Statement of Errors, Doc. 10, Pg. ID 623-25; Objections, Doc. 13, Pg. ID 658-59.)

The Sixth Circuit instructs that "[e]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim . . . or wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (suggesting that "superficial" and "occasional" can be consistent descriptions within the RFC context); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his [RFC] finding."). In this particular case, the ALJ found Dr. Hill and Dr. Souder's opinions to be "generally persuasive" as he viewed the "entire record" in formulating the RFC. (Decision, Doc. 7-2, Pg. ID 48, 55.)

While the ALJ acknowledged that Dr. Hill and Dr. Souder "employ slightly different language" than that within the RFC (Decision, Doc. 7-2, Pg. ID 55), courts have

5

recognized that "it may fall to the ALJ to convert and incorporate the limitations set forth in a medical opinion into vocationally relevant terms." *Paul S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-4090, 2023 WL 6389428, at *4 (S.D. Ohio Oct. 2, 2023), *report and recommendation adopted*, No. 2:22-CV-4090, 2023 WL 7002734 (S.D. Ohio Oct. 24, 2023) (cleaned up); *see also Modro v. Comm'r of Soc. Sec.*, No. 2:18-CV-900, 2019 WL 1986522, *8 (S.D. Ohio May 6, 2019) ("[T]he ALJ reasonably converted Dr. Sarver's findings into vocationally relevant terms."). Here, the ALJ accommodated Dr. Hill and Dr. Souder's opinions through vocational language, such as an outright prohibition on tandem work or any public interaction at all. *See Reeves*, 618 F. App'x at 275 (rejecting the argument that the ALJ failed to "include any RFC limitation related to contact with fellow workers or supervisors" when the RFC merely reflected "only occasional interaction with the public"); *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 739 (S.D. Ohio 2024) (explaining that *Reeves* "at least suggests that an ALJ need not distinguish a medical opinion unless his assessment of the claimant's abilities is *factually inconsistent* with the medical opinion, rather than incomplete or semantically different"); *Paul S.*, 2023 WL 6389428, at *6 (finding that the ALJ's definition of "superficial" was not "contradicted by the other record evidence").

As several courts throughout the Sixth Circuit have held, "'occasionally' does not create a sufficient conflict with 'superficially' when applied to 'interactions,' such that the ALJ would be required to explain that change." *Stephen D.*, 734 F. Supp. 3d at 738 ("[W]hen a person is limited to engaging in only short and infrequent interactions, that strongly correlates, as a practical matter, with interactions that are superficial, as well."). Word-for-word recitation is not required in this context. *See, e.g., Russetta W. v. Comm'r of*

6

*Soc. Sec. Admin.*, No. 2:23-CV-2260, 2024 WL 3982948, at *6 (S.D. Ohio Aug. 29, 2024), *report and recommendation adopted sub nom. Russetta W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2260, 2024 WL 4266520 (S.D. Ohio Sept. 23, 2024) (affirming RFC that precluded the plaintiff from interacting with the public, participating in tandem work, and only occasionally interacting with supervisors and coworkers when medical opinions spoke in terms of "brief and superficial" interactions); *Brian M. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2649, 2024 WL 2059775, at *5-6 (S.D. Ohio May 8, 2024), *report and recommendation adopted*, No. 2:23-CV-2649, 2024 WL 2702009 (S.D. Ohio May 23, 2024) (finding no conflict in the RFC language limiting "face-to-face interaction with the general public," "tandem tasks," and only occasional interaction with coworkers when the medical opinions limited the claimant to "superficial" interactions); *Kara W. v. Comm'r of Soc. Sec.*, No. 2:24-CV-4294, 2026 WL 681807, at *3-4 (S.D. Ohio Mar. 11, 2026) (similar).

In any event, "Plaintiff fails to show that inclusion of a vocational analog for the disputed terms would have resulted in a *more restrictive* RFC." *Sanscrainte v. Comm'r of Soc. Sec.*, No. 1:23-CV-1073, 2024 WL 3466273, at *8 (W.D. Mich. July 19, 2024) (emphasis added); *see also Stamper v. Comm'r of Soc. Sec.*, No. 1:18-CV-697, 2019 WL 2437813, at *4 (N.D. Ohio May 8, 2019), *report and recommendation adopted*, No. 1:18-CV-697, 2019 WL 2437016 (N.D. Ohio June 11, 2019) (finding RFC's "no interaction with the public" phrase to be more restrictive than physicians' opinion that the plaintiff could only manage superficial contact); *Collins v. Comm'r of Soc. Sec.*, No. 3:17-CV-2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018), *report and recommendation adopted*, No. 3:17-CV-2059, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019) (By including "no interaction with the general public,"

7

in the RFC, "the ALJ provided a more restrictive RFC than the occasional interpersonal contact restriction levied by the State agency psychologist.").

To be sure, if the ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at * 7 (July 2, 1996). For the reasons explained above, however, Plaintiff has not shown a conflict to necessitate an explanation. *See Stephen D.*, 734 F. Supp. 3d at 739-40. Nevertheless, the ALJ did provide reasoning for choosing these particular restrictions. *See Muoio v. Comm'r of Soc. Sec.*, No. 4:24-CV-2175, 2026 WL 468557, at *12 (N.D. Ohio Feb. 19, 2026).

Immediately after explaining his RFC findings as to superficial interaction, the ALJ elaborated as follows:

> However, the claimant is not precluded from performing unskilled work, or from all interaction with others, as she has been alert, oriented, and generally cooperative and responsive on examination, with a neat, clean appearance, appropriate dress, adequate hygiene/grooming, generally normal eye contact, adequate energy, generally logical, relevant, coherent comments, generally normal thought content, with no overt psychosis, and adequate level of understanding. *Therefore, additional mental restrictions are not warranted.*

(Decision, Doc. 7-2, Pg. ID 53-54 (emphasis added)). Elsewhere, the ALJ explained that "the claimant's mental impairments, while severe, are manageable with conservative outpatient behavioral health treatment." (*Id.* at Pg. ID 55.) Taken together, the ALJ's decision provides a sufficient bridge between the RFC, Dr. Hill and Dr. Souder's opinions, and the entire record to allow the Court to trace the ALJ's reasoning.

Finally, to the extent Plaintiff contests that the ALJ did not provide proper supportability and consistency for his opinion under 20 C.F.R. § 404.1520c, Plaintiff appears to raise this specific issue for the first time in her Objections. (*Compare* Objections, Doc. 13, Pg. ID 658, *with* Statement of Errors, Doc. 10, Pg. ID 624-25.) "Parties cannot 'raise at the district court stage new arguments or issues that were not presented' *before* the magistrate judge's final report and recommendation." *Peek v. Comm'r of Soc. Sec.*, 585 F. Supp. 3d 1014, 1017 (E.D. Mich. 2021) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)). Assuming arguendo that this argument is properly raised, the Court does not find it convincing. The ALJ specifically walked through the supportability and consistency analysis for Dr. Hill and Dr. Souder's opinions as follows:

> These opinions are *generally supported* by evidence of schizophrenia spectrum disorder, depressive disorder, panic disorder, and alcohol related disorder, resulting in depression and reportedly persistent auditory hallucinations, but with no agitation or overt delusions, and generally cooperative behavior during examinations with treating providers, in contrast to the claimant's presentation during the 2022 consultative examination, noted therein.
>
> In addition, the opinions are *largely consistent* with the remaining evidence of record, namely subsequent primary care and mental health treatment notes, which contain evidence of persistent tearfulness, occasional preoccupation and agitation, pressured speech, tangential thought processes, a depressed mood, labile affect, and withdrawn behavior, but normal orientation and appearance, generally normal eye contact, and intact cognition on subsequent examinations, despite participation in limited, conservative mental health treatment only. For these reasons, the opinions of Dr. Hill and Dr. Souder are generally persuasive.

(Decision, Doc. 7-2, Pg. ID 56 (citations omitted and emphasis added)). Viewing this analysis against the backdrop of the decision as a whole, Plaintiff has not demonstrated error regarding 20 C.F.R. § 404.1520c.

9

For all these reasons, the Court finds that the ALJ's RFC was not contrary to Dr. Hill and Dr. Souder's opinions. And, even if it were, the ALJ employed vocational language after explaining that he found these specific opinions to be "generally persuasive." Thus, Plaintiff's first objection is overruled.

## II.    Medically Determinable Impairments

Plaintiff's second statement of error revolves around the ALJ's "analysis in failing to find the claimant's impairments of neuropathy to be medically determinable and then failing to . . . state the basis for including no limitations relating to this impairment, whether severe or non-severe, in the RFC." (Statement of Errors, Doc. 10, Pg. ID 626.) The parties agree that "an ALJ's failure to find additional severe impairments at Step Two '[does] not constitute reversible error,' where the ALJ considers all of a plaintiff's impairments in the remaining steps of the disability determination." *Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 679 (S.D. Ohio 2020) (quoting *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020); (Statement of Errors, Doc. 10, Pg. ID 625-26; Response, Doc. 11, Pg. ID 640-41).

Plaintiff specifically objects to the Chief Magistrate Judge's finding that "[a]lthough the ALJ stated that 'there is no objective evidence establishing that the claimant suffers from arthritis *or any other physical impairment* pertaining to the claimant's upper extremities' (Decision, Doc. 7-2, Pg. ID 45 (emphasis added)), review of the entire decision indicates that the ALJ did find Plaintiff's peripheral neuropathy to be a medically determinable impairment, as it was considered in assessing Plaintiff's RFC."

10

(Report, Doc. 12, Pg. ID 653; *see* Objections, Doc. 13, Pg. ID 659-61.) After thorough review, the Court finds the Chief Magistrate Judge's conclusion to be well supported by the record.

The ALJ referenced Plaintiff's peripheral neuropathy throughout the RFC. (*See, e.g.*, Decision, Doc. 7-2, Pg. ID 50-52 (noting Plaintiff's "acroparesthesia" and "peripheral neuropathy [diagnoses], likely secondary to alcohol use"); Pg. ID 50-51, 53 (repeatedly highlighting Plaintiff's documented "normal range of motion" and "normal joints"); Pg. ID 49, 53 (citing normal EMG of the right upper and lower extremities); Pg. ID 49 (recounting Plaintiff's testimony that she drops things and cannot hold items for long periods of time due to a hand problem); Pg. ID 54 (explaining that "physical examinations and testing have revealed mild to moderate musculoskeletal, neurological, and/or respiratory abnormalities at most")). And, contrary to Plaintiff's assertion (Objection, Doc. 13, Pg. ID 661), the ALJ considered Plaintiff's reported symptoms associated with pain. (Decision, Doc. 7-2, Pg. ID 50-51; *see also* Pg. ID 55 (concluding that "the record does support some limitations due to her symptoms and allegations")). For instance, the ALJ explained that evaluations revealed "hypersensitivity to touch of the right upper extremity, decreased strength of the bilateral shoulders, elbows, and wrists" but further noted that Plaintiff was noncompliant with treatment. (*Id.* at Pg. ID 51.)

After walking through this analysis, the ALJ determined that Plaintiff retained the ability to conduct "medium work." (Decision, Doc. 7-2, Pg. ID 53, 55.) In reaching this conclusion, the ALJ considered not only Plaintiff's physical restrictions and symptoms as alleged but also Plaintiff's daily activity, history of conservative treatment, as well as

11

examination and test results. (*Id.* at Pg. ID 54-55.) *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (highlighting, among other things, the ALJ's analysis of the claimant's daily activities); *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 598 (6th Cir. 2018) (crediting the ALJ's consideration of the claimant's lack of corresponding treatment and the claimant's noncompliance with treatment); *Moore v. Comm'r of Soc. Sec.*, No. 2:17-CV-144, 2018 WL 1477233, at *9-14 (S.D. Ohio Mar. 27, 2018) (affirming the RFC determination when the ALJ acknowledged the plaintiff's testimony about headaches but found inconsistencies with conservative treatment and the plaintiff's daily activities). Therefore, this analysis contrasts from a situation in which the ALJ provided "no explanation" for failing to fully credit a purported impairment within the RFC context. *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009). The ALJ's "explanation is sufficient because it makes clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 501 (6th Cir. 2014) (cleaned up).

Moreover, as the ALJ explained in the RFC, "the record as a whole, including the overall evidence of record, the medical evidence, the claimant's testimony, the claimant's activities, and other factors . . . support some functional limitations [but] do not fully support the allegations regarding the severity or frequency of symptoms as more supportive of any greater limitations or restrictions." (Decision, Doc. 7-2, Pg. ID 58.) *See Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999-1000 (E.D. Mich. 2024) (explaining that the ALJ not only specifically mentioned the impairments in the RFC analysis but also conveyed that the RFC was based upon the "entire record"); *Emard*, 953 F.3d at 851 (The

12

ALJ "stated that she had carefully considered the entire record and 'all symptoms' at this step in the process."). The Sixth Circuit has also clarified that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467 (6th Cir. 2004) (quotation omitted).

Put simply, the ALJ adequately explained how the record surrounding the peripheral neuropathy affected Plaintiff's RFC. *See Sedgwick v. Kijakazi*, No. 2:22-CV-120, 2023 WL 7924804, at *12 (E.D. Tenn. Nov. 16, 2023) (In any event, "[a]ssuming Plaintiff's headaches are a separate medically determinable impairment that the ALJ was required to consider as part of his RFC determination, the Court finds that the ALJ properly considered the limiting effects of Plaintiff's headaches as part of his RFC analysis."). Plaintiff's second and final objection is therefore overruled.

## CONCLUSION

For all these reasons, the Court **OVERRULES** Plaintiff's Objections (Doc. 13) and **ADOPTS** the Chief Magistrate Judge's Report and Recommendation (Doc. 12) in full. As the ALJ's decision reflects no reversible error and is supported by substantial evidence, the ALJ's decision is **AFFIRMED**. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND

13